UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JOSE RODRIGUEZ,

                               Plaintiff,

                                                 9:10-CV-1172
v.                                                 (GTS/GHL)

ESTATE OF CURTIS DROWN,

                               Defendant.

_____

APPEARANCES:                                       OF COUNSEL:

JOSE RODRIGUEZ, 82-A-4529
Plaintiff *pro se*
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN                    BRUCE J. BOIVIN, ESQ.
Attorney General for the State of New York       Assistant Attorney General
Counsel for Defendant
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Jose Rodriguez alleges that Curtis Drown[1] found him guilty of disciplinary violations and

---

[1]       Mr. Drown died on March 29, 2011.  (Dkt. No. 15.)  On July 11, 2011, his estate
was substituted as the defendant in this action.  (Dkt. No. 23.)  I will refer to Mr. Drown as
"Defendant Drown" in this Report-Recommendation.

sentenced him to 144 months in the Special Housing Unit ("SHU") without substantial evidence.

(Dkt. No. 1.)  Currently pending before the Court is Defendant's motion to dismiss for failure to

state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 12.)  For the

reasons that follow, I recommend that Defendant's motion be granted.

## I.      BACKGROUND

The following facts are taken from the face of the complaint, the attachments to the

complaint, and matters of which the Court may take judicial notice:

On April 24, 2009, at approximately 11:05 p.m., Officer Bailey of Oneida Correctional

Facility observed Plaintiff Jose Rodriguez and inmate Fredrick Velez fighting.  (Dkt. No. 1-1 at

2-3.[2])  Officer Bailey and another officer broke up the fight.  *Id*. at 3.  Later, at the infirmary, it

was discovered that Inmate Velez had a stab wound to his chest.  *Id*.  He died a few hours later.

*Id*. at 2.  Later, a 9 ½ inch shank was discovered in a garbage can about forty feet from where

Plaintiff and Inmate Velez were fighting.  *Id.* at 3, 37.

Initially, Officer Bailey wrote a misbehavior report charging Plaintiff with assault,

fighting, and creating a disturbance.  (Dkt. No. 1 at 9.)  On April 28, 2009, an amended

misbehavior report was issued that additionally charged Plaintiff with possessing a weapon and

violent conduct.  *Id.* at 10.  The amended misbehavior report stated that Officer Bailey:

> heard a commotion in the dorm.  I observed [Plaintiff] . . . and Inmate
> Velez exchanging punches. [Plaintiff] stepped back from Inmate
> Velez and threw a chair at Inmate Velez.  I and Officer Piersall
> approached them and we ordered them to break it up and stop
> fighting. They complied. We separated them both and I then ordered
> [Plaintiff] to put his hands on the wall to be pat frisked.  He complied.

---

[2]       Page numbers in citations to the complaint and its attachments refer to the page
numbers assigned by the Court's electronic filing system.

> Inmate Velez was transported to the infirmary, where he was found
> to have a stab wound to his chest.  After, a 9 ½ inch shank was
> recovered from a garbage can near where the inmates were fighting
> in the dorm by Officer Bolan.

(Dkt. No. 1-1 at 3.)  The amended report was served on Plaintiff at 8:44 a.m.  *Id.* at 7.

On April 29, 2009, at 1:13 p.m., Defendant Drown conducted the disciplinary hearing on the misbehavior report.[3]  (Dkt. No. 1 at 10; Dkt. No. 1-1 at 7, 10.)  Plaintiff pleaded guilty to the charges of violent conduct, assault, and fighting.  (Dkt. No. 1-1 at 8-9.)  Plaintiff pleaded not guilty to the charges of creating a disturbance and possessing a weapon.  *Id*. at 9.  Plaintiff testified that Inmate Velez attacked him with a mop wringer and he threw the chair to defend himself.  *Id.* at 11.  Plaintiff testified that when the officers arrived they stopped fighting and that was all there was to it.  *Id.* at 12.  Plaintiff testified that he was not aware of anyone else fighting with Inmate Velez.  *Id.*  Plaintiff testified that there was no connection between himself and the weapon that was found later.  *Id.* at 16.

The only witness Plaintiff requested was Officer Bailey.  *Id.* at 15, 31.  The hearing was adjourned so that Officer Bailey could appear.  *Id.* at 17.

When the hearing recommenced, Defendant Drown noted that he had some photographs and documents that Plaintiff had not had an opportunity to review.  *Id.* at 18.  These included a copy of the floor plan, a picture of an injury to Plaintiff's right hand, a picture of Plaintiff in his underwear, a picture of an injury to Plaintiff's face, a picture of the shank, a picture of Inmate Velez at Rome Hospital, a close up of Inmate Velez's identification picture, and a picture of the stab wound on Inmate Velez's chest.  *Id*.  Defendant Drown reviewed the photographs and

---

[3]     Plaintiff attached a copy of the disciplinary hearing transcript to his complaint. (Dkt. No. 1-1 at 7-42.)

documents with Plaintiff.  *Id.*

After Defendant Drown and Plaintiff reviewed the photographs and documents, Officer

Bailey testified.  *Id.* at 19-31.  Officer Bailey's testimony was essentially a more detailed version

of the misbehavior report.  Officer Bailey testified that all of the things in the amended

misbehavior report were based on things he observed and learned.  *Id.* at 30.  Officer Bailey

testified that he did not observe anything unusual when he made his rounds between 10:45 and

11:05 p.m.  *Id.* at 27.  He testified that he did not see anything in either Inmate Velez's hand or

Plaintiff's hand when he came to break up the fight.  *Id.* at 20, 29.  He characterized the fight as

mutual combat with Plaintiff as the more active combatant.  *Id.* at 21.  Officer Bailey testified

that the shank, with blood on it, was found in a garbage can next to a slop sink.  *Id.* at 24.  He

testified that he did not see Plaintiff receive the injuries shown in the pictures.  *Id.*

Plaintiff asserted that he was not guilty of creating a disturbance because the fight

happened at 11:00 p.m. and "lights out" is not until 2:00 a.m.  *Id.* at 25.  Officer Bailey testified

that although the day room is open until 2:00 a.m., lights are out in other parts of the facility at

11:00 p.m. and the commotion woke up inmates who were sleeping.  *Id.*

Defendant Drown stated that he was "somewhat concerned" because Plaintiff testified

that Inmate Velez attacked him first with a mop wringer "which seems inconsistent . . . with the

testimony of C.O. Bailey that there was no mop [w]ringer."  *Id.* at 31.  Plaintiff stated that he had

no comment.  *Id.*  Defendant Drown stated that he "would feel more comfortable . . . trying to

determine if there are other facts that might go to [Plaintiff's] claim of self defense."  *Id.* at 32.

Accordingly, he adjourned the hearing until Investigator Retrosi, the lead investigator for the

Investigator General's office regarding the death of Inmate Velez, could testify.  *Id.* at 32-33.

Before adjourning the hearing, he confirmed that he had received all of the testimony and

evidence that Plaintiff had requested him to consider.  *Id.* at 32.  Plaintiff said that he had.  *Id.*

      When the hearing recommenced, Investigator Retrosi testified that Plaintiff had given two

statements to the State Police Bureau of Criminal Investigation.  Investigator Retrosi was in the

room when Plaintiff made his first statement, in which "he admitted to striking Inmate Velez one

time in the chest but . . . denied having a weapon."  *Id.*  In that first statement, Plaintiff said that

he and Inmate Velez had been playing dominoes.  *Id.* at 36.  Plaintiff believed that Inmate Velez

had cheated and called him on it.  *Id*.  Inmate Velez "took exception to it."  *Id*.  Plaintiff got up to

walk away and Inmate Velez struck him on one of his ears.  *Id.*  Plaintiff left, but later he walked

past Inmate Velez, threw the chair, and struck Inmate Velez in the chest.  *Id*.  In the second

statement, for which Investigator Retrosi was not personally present, Plaintiff explained "that he

had a weapon, and he stabbed Inmate Velez one time in the chest with that weapon."  *Id.* at 33.

In that statement, Plaintiff stated that he threw the weapon down the aisle afterward.  *Id.* at 36.

Investigator Retrosi did not know how long after the fight the weapon was discovered.  *Id.* at 37.

Investigator Retrosi testified that there was no indication that any other inmates were involved in

the altercation.  *Id.* at 35.  Investigator Retrosi testified that a mop wringer was found in the same

aisle as Inmate Velez's living quarters.  *Id.*

      Defendant Drown received Plaintiff's statements to the State Police into evidence.  *Id.* at

34-35.  Plaintiff objected to Defendant Drown considering the statements he gave to the State

Police because "the Police Statement is not in the misbehavior report."  *Id.* at 34.  He said that

the "statement I make . . .  can't be used against me for that point, and I'm not going to talk about

that."  *Id.* at 38.

Defendant Drown received Inmate Velez's death certificate into evidence. *Id.* at 35. It stated that the immediate cause of Inmate Velez's death was a hemorrhage due to a perforation of the heart from a stab wound to the left lower chest. *Id.* at 35. Defendant Drown granted Plaintiff's request to review the document. *Id.*

Before concluding the fact-finding portion of the hearing, Defendant Drown asked Plaintiff if he had anything else that he wanted considered. *Id.* at 39. Plaintiff said no. *Id.*

Defendant Drown found Plaintiff guilty of all of the charges in the misbehavior report. *Id.* He sentenced Plaintiff to 144 months in the SHU, loss of privileges, and a loss of 144 months of good time credits. *Id.* He stated that he relied on Plaintiff's testimony, Officer Bailey's testimony, Investigator Retrosi's diagram of the incident, the pictures, Inmate Velez's death certificate, and the two signed confessions that Plaintiff gave to the State Police. *Id.* He stated that

> There is substantial evidence that on 4/24/09 you and Mr. Velez were involved in a continuing altercation and that you forced the escalation of the altercation which only ended when you threw a chair and stabbed him with a 9 ½ inch shank that was recovered. And that blow to the chest killed Mr. Velez by hemorrhage due to perforation of the heart caused by the resultant stab wound. Your argument of self-defense is contradicted by the evidence both physical and in your written confession.

*Id.*

In this lawsuit, Plaintiff alleges that Defendant Drown ignored all of his objections. (Dkt. No. 1 at 20.) Plaintiff alleges that the transcript of his disciplinary hearing is not accurate because it does not include testimony by Officer Bailey that "were other [two] items found with that weapon at the garbage can." *Id.* at 15.

Plaintiff appealed Defendant Drown's decision to Brian Fischer, Commissioner of the

New York State Department of Corrections and Community Supervision. *Id.* at 11.

Commissioner Fischer affirmed Defendant Drown's decision on June 24, 2009. *Id.*

On November 9, 2009, Plaintiff filed an Article 78 petition. *Id.* at 11-12. The Third

Judicial Department affirmed Defendant Drown's disciplinary disposition. (Dkt. No. 1-1 at 5-6.)

On August 16, 2010, Plaintiff pleaded guilty to one count of first degree manslaughter for

killing Inmate Velez.[4] (Dkt. No. 12-10 at 3.)

Plaintiff filed this action on September 30, 2010. (Dkt. No. 1) Plaintiff requests

compensatory damages and injunctive relief, including a return to a medium security prison[5] with

restoration of all rights and privileges, the expungement of his disciplinary conviction, and the

"expungement" of "all publication made in the newspaper on April 25, 2009, at Utica County

and Oneida County." *Id.* at 6, 13.

Defendant now moves to dismiss the complaint. (Dkt. No. 12.) Defendant argues that

(1) Plaintiff's claim is barred by the rule in *Heck v. Humphrey*; (2) Plaintiff has failed to state a

due process claim; and (3) Plaintiff's claims are barred by the doctrine of collateral estoppel.[6]

---

[4]     Defendant requests that the Court take judicial notice of Plaintiff's conviction.
(Dkt. No. 12-1 at 3-4.) Defendant's request is granted. *Shmueli v. City of New York*, 424 F.2d
231, 233 (2d Cir. 2005); *Davis v. Cotov*, 214 F. Supp. 3d 310, 315-16 (E.D.N.Y. 2002) (taking
judicial notice of guilty plea).

[5]     Plaintiff was transferred from Oneida Correctional Facility to Mid-State
Correctional Facility on April 25, 2009, and placed in administrative segregation because he was
accused of homicide. (Dkt. No. 1 at 9.) Plaintiff was transferred from Mid-State Correctional
Facility to Upstate Correctional Facility on August 17, 2009. *Id.* at 8.

[6]     Because I find that Defendant's *Heck* and due process arguments are dispositive, I
decline to address the collateral estoppel issue.

(Dkt. No. 12-1.)  Plaintiff has opposed the motion.  (Dkt. No. 13.)  Defendant has filed a reply.

(Dkt. No. 14.)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure

12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*,

"a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means

that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not

shown -- that the pleader is entitled to relief."  *Id.* at 1950 (internal citation and punctuation

omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the

plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

Courts are "obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct.

at 1949.

## III.   ANALYSIS

### A.     *Heck v. Humphrey*

Defendant argues that Plaintiff's claim is barred by the rule in *Heck v. Humphrey*, 512

U.S. 477 (1994) because he pleaded guilty to first degree manslaughter for killing Inmate Velez.[7]

(Dkt. No. 12-1 at 7-8.[8])  Defendant is correct that Plaintiff's claim is barred by *Heck*.  However,

the reason for the *Heck* bar is different than the one Defendant raises in his motion to dismiss.

As discussed below, Plaintiff's claim is barred by *Heck* because he lost good time credits as a

result of his disciplinary disposition and he has not agreed "to abandon forever any and all claims

he has with respect to the sanctions that affected the length of his imprisonment."

In *Heck*, the Supreme Court held that:

> in order to recover damages for [an] allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence invalid,
> a § 1983 plaintiff must prove that the conviction or sentence has been
> reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or
> called into question by a federal court's issuance of a writ of habeas
> corpus.

---

[7]     This argument may properly be considered under Rule 12(b)(6) without
converting the motion to a motion for summary judgment because it relies entirely on Plaintiff's
complaint and matters of which the Court may take judicial notice.  *Amaker v. Weiner*, 179 F.3d
48, 50 (2d Cir. 1999.)

[8]     Page numbers in citations to Defendant's Memorandum of Law refer to the page
numbers in the original document.

*Heck*, 512 U.S. at 486-87.   Under *Heck* and its progeny, "a state prisoner's § 1983 action is

barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief) . . . -if

success in that action would necessarily demonstrate the invalidity of confinement or its

duration."  *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) (emphasis omitted).   If a plaintiff

whose success would necessarily demonstrate the invalidity of the confinement or its duration

does not satisfy *Heck*'s 'favorable termination' rule, he must seek relief through the federal

habeas corpus statute rather than through § 1983.  *Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir.

2006) ("[T]he purpose of the *Heck* favorable termination requirement is to prevent prisoners

from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the

overall length of confinement and that punishments related to their term of imprisonment or the

procedures that led to them . . . must be attacked through a habeas petition.")

Here, Plaintiff pleaded guilty to first degree manslaughter for killing Inmate Velez.

Specifically, he pleaded guilty to violating New York Penal Law § 125.20(1), which states that a

"person is guilty of manslaughter in the first degree when [w]ith intent to cause serious physical

injury to another person, he causes the death of such person . . ."  (Dkt. No. 12-9 at 2.)   In this

action, he argues that there was not substantial evidence for Defendant Drown's determination

that Plaintiff possessed a weapon.  (Dkt. No. 1 at 5.)  Defendant has not provided the Court with

a copy of Plaintiff's plea allocution, so any details he provided during his guilty plea are not

available.  Without those details, the Court cannot determine whether Plaintiff, as part of his

plea, admitted to using a weapon.  Although it is unlikely, Plaintiff may have pleaded guilty to

manslaughter but continued to maintain that he did not use a weapon.  It is thus not apparent

from the face of the complaint or from matters of which the Court may take judicial notice that

Plaintiff's success in this action would *necessarily* demonstrate the invalidity of his first degree

manslaughter plea.

Plaintiff's claim is, however, barred by *Heck* because success in this action would

demonstrate the invalidity of his disciplinary disposition.  In *Edwards v. Balisok*, 520 U.S. 641

(1997), the Supreme Court extended the *Heck* rule to prisoners' challenges to prison disciplinary

proceedings that resulted in a loss of good time credits.  The Court held that a prisoner seeking

damages and declaratory relief regarding a disciplinary hearing that resulted in a loss of good

time credit is required to show that the disciplinary sentence has been reversed, declared invalid,

or called into question by a federal court.  Despite *Edwards*, "a prisoner can, without

demonstrating that the challenged disciplinary proceedings or resulting punishments have been

invalidated, proceed separately with a § 1983 action aimed at the sanctions or procedures that

affected the conditions of his confinement ... if he agrees to abandon forever any and all claims

he has with respect to the sanctions that affected the length of his imprisonment." *Peralta*, 467

F.3d at 100.

Here, Plaintiff lost good time credits as part of Defendant Drown's disciplinary

disposition and that disposition has not been reversed, declared invalid, or called into question.

Plaintiff has not agreed to "abandon forever any and all claims he has with respect to the

sanctions that affected the length of his imprisonment."  Indeed, Plaintiff seeks the restoration of

"all rights and privileges" that he lost, which included good time credits.  (Dkt. No. 1 at 6.)

Therefore, I recommend that the Court dismiss Plaintiff's claim because it is barred by the

*Heck/Edwards* rule.

The "[d]isposition of [a] case on *Heck* grounds . . . warrants only dismissal without

prejudice, because the suit may be reinstituted should [the] plaintiff's conviction be expunged by

executive order, declared invalid . . . , or called into question by a federal court's issuance of a

writ of habeas corpus."  *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (punctuation omitted).

Moreover, Plaintiff could reinstitute his action by abandoning any claim he has regarding the loss

of good time credits.  Therefore, I recommend that the Court dismiss Plaintiff's claim without

prejudice.

### B.      Due Process

Although Plaintiff's action is barred by the *Heck/Edwards* rule, I will address the merits

of Plaintiff's claims.  Plaintiff claims that Defendant Drown violated his right to due process.

(Dkt. No. 1 at 7.)  Defendant moves to dismiss this claim.  (Dkt. No. 12-1 at 4.)  I recommend

that the Court dismiss the claim without leave to amend.

In order to state a claim for violation of his procedural due process rights, a plaintiff must

allege facts plausibly suggesting that he was deprived of a liberty interest without due process of

law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

Plaintiff was deprived of a liberty interest.  An inmate has a liberty interest in remaining

free from a confinement or restraint where (1) the state has granted its inmates, by regulation or

statute, an interest in remaining free from that particular confinement or restraint; and (2) the

confinement or restraint imposes "an atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*,

280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).  Regarding the first prong

of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being

confined to the SHU."  *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004).  The issue, then,

is whether Plaintiff's confinement in the SHU imposed "an atypical and significant hardship on

[him] in relation to the ordinary incidents of prison life."   In the Second Circuit, disciplinary

segregation lasting more than 305 days is a "sufficient departure from the ordinary incidents of

prison life."  *Palmer*, 364 F.3d at 65 (quoting *Colon v. Howard*, 215 F.3d 227,  231 (2d Cir.

2000)).  Here, Plaintiff was sentenced to 144 months in the SHU.  Therefore, he was deprived of

a liberty interest.

The issue, then, is whether Plaintiff received all of the process to which he was due.  Due

process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice

of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses

and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written

statement of the disposition, including the evidence relied upon and the reasons for the

disciplinary actions taken.[9]  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356

F.3d 481, 487 (2d Cir. 2004).

The documents attached to the complaint show that Plaintiff received advanced written

notice of the charges against him.  Fair notice requires the charging officer "to be sufficiently

specific as to the misconduct with which the inmate is charged to inform the inmate of what he is

accused of doing so that he can prepare a defense to those charges and not be made to explain

away vague charges set out in a misbehavior report."  *Taylor v. Rodriguez*, 238 F.3d 188, 192-93

(2d Cir. 2001) (punctuation and citation omitted).  Here, Plaintiff received the original

_____

[9]        In some circumstances, such as where the inmate is illiterate or where the
complexity of an issue makes it unlikely that the inmate will be able to collect and present the
evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to
assistance from another inmate or from prison staff in preparing his defense.  *Wolff*, 418 U.S. at
570.  Plaintiff does not argue that he was entitled to assistance.

misbehavior report two days before the hearing and the amended misbehavior report more than

twenty-nine hours before the hearing.  (Dkt. No. 1 at 9; Dkt. No. 1-1 at 7.)  The misbehavior

report was specific about the misconduct with which Plaintiff was charged and Plaintiff was able

to prepare a defense.

The documents attached to the complaint show that Plaintiff was afforded a reasonable

opportunity to call witnesses and present documentary evidence.  The only witness Plaintiff

requested was Officer Bailey.  (Dkt. No. 1-1 at 15, 31.)  Officer Bailey testified.  *Id.* at 19-31.

Plaintiff did not request that Defendant Drown consider any documentary evidence.  Defendant

Drown confirmed, twice, that Plaintiff had presented all of the evidence that he wanted

Defendant Drown to consider.  *Id*. at 32, 39.

The documents attached to the complaint show that Defendant Drown was a fair and

impartial hearing officer.  It is well settled "that the degree of impartiality required of prison

hearing officials does not rise to the level of that required of judges generally." *Espinal v. Goord*,

180 F. Supp. 2d 532, 539 (S.D.N.Y.2002) (citing *Francis v.. Coughlin*, 891 F.2d 43, 46 (2d

Cir.1989)).  Due process in this context requires only that the hearing officer's decision not be

"arbitrary." *Wolff*, 418 U.S. at 571.  A decision is not "arbitrary" if it is supported by "some

evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "This standard is extremely

tolerant and is satisfied 'if there is *any* evidence in the record that supports' the disciplinary

ruling." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (emphasis in original) (quoting *Friedl v.*

*City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).

The documents attached to the complaint show that Defendant Drown's disposition was

based on "some evidence."  Defendant Drown heard testimony from both Plaintiff and Officer

Bailey that Plaintiff and Inmate Velez fought and that Inmate Velez did not fight with any other inmates on the night he died.  (Dkt. No. 1-1 at 12, 35.)  Most damning, Defendant Drown heard testimony that Plaintiff confessed to stabbing Inmate Velez with a shank.  *Id.* at 33.  Therefore, Defendant Drown's disposition was based on "some evidence."

Plaintiff argues that Defendant Drown's disposition violated his rights because it was not based on *substantial* evidence.  (Dkt. No. 1 at 5).  However, "substantial evidence" is not the federal due process standard.  Rather, it is the standard that New York *state* courts apply to inmate's claims regarding disciplinary hearings.  "New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute substantial evidence. This requirement is sterner than the 'some evidence' standard necessary to afford due process." *Sira*, 380 F.3d at 76 n. 9.  To satisfy the federal due process standard, a hearing officer's decision must only be based on "some" evidence rather than "substantial" evidence.  As discussed above, Defendant Drown's decision was based on some evidence.

Defendant Drown issued a written statement of his disposition.  (Dkt. No. 12-3 at 20.) Plaintiff included the written disposition as an exhibit to his Article 78 petition.  *Id*.  Plaintiff does not contend in this action that Defendant Drown failed to provide him with a written disposition.

Accordingly, Plaintiff received advanced written notice of the charges against him, he was afforded a reasonable opportunity to call witnesses and present documentary evidence, Defendant Drown was a fair and impartial hearing officer, and Defendant Drown issued a written statement of the disposition.  Therefore, I recommend that the Court grant Defendant's motion to dismiss the due process claim.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).  Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint.  *See Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).  In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

Here, Plaintiff has essentially pleaded himself out of court.  By attaching the disciplinary hearing transcript to the complaint, Plaintiff provided conclusive evidence that he received all of the process to which he was due.  The transcript shows that the problem with Plaintiff's due process cause of action is substantive and cannot be cured with better pleading.  Therefore, I recommend that the Court dismiss Plaintiff's due process claim without leave to amend.

### C.      Eighth Amendment

Plaintiff claims that Defendant Drown committed "the torts of unusual punishment." (Dkt. No. 1 at 7.)  I construe this as an allegation that Defendant Drown violated his Eighth Amendment rights.  Defendant has not addressed this claim.  I recommend that the Court dismiss the claim *sua sponte* with leave to amend if Plaintiff can surmount the *Heck/Edwards* bar.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments.  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment.  *Estelle v. Gamble*,

429 U.S. 97, 102-03 (1976).  Eighth Amendment claims involve both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.  Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The complaint does not allege any facts plausibly alleging that Defendant Drown denied Plaintiff the minimal civilized measure of life's necessities.  Therefore, I recommend that the Court *sua sponte* dismiss Plaintiff's Eighth Amendment claim pursuant to 28 U.S.C. § 1915(e)(2) with leave to amend.  As discussed above in Section III(A), however, Plaintiff would first be required to surmount the *Heck/Edwards* bar before being allowed to amend.

> **D.      State Law Claims**

Plaintiff claims that Defendant Drown violated unspecified state laws.  (Dkt. No. 1 at 7-8.)  I recommend that the Court decline to exercise jurisdiction over these claims in light of the dismissal of Plaintiff's federal claims.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion to dismiss for failure to state a claim (Dkt. No. 12) be **GRANTED** without leave to amend the due process claim but with leave to amend the Eighth Amendment and state law claims in the event that he can overcome the *Heck/Edwards* bar.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).



Dated: September 1, 2011
        Syracuse, New York

                                            George H. Lowe
                                            United States Magistrate Judge